UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ALICIA M.-P.,

              Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.

Case No. C20-6073-MLP

ORDER

## I.    INTRODUCTION

Plaintiff seeks review of the denial of her application for Supplemental Security Income ("SSI"). Plaintiff contends the administrative law judge ("ALJ") erred in assessing her testimony and the lay testimony, certain medical opinions, and her residual functional capacity ("RFC"). (Dkt. # 20 at 1.) Plaintiff also argues that evidence submitted for the first time to the Appeals Council requires remand. As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II.    BACKGROUND

Plaintiff was born in 1969, has a GED, and has worked as a court administrative assistant and barista. AR at 259, 272. Plaintiff was last gainfully employed in 2007. *Id.* at 259.

ORDER - 1

In June 2018, Plaintiff applied for SSI and Disability Insurance Benefits ("DIB"), with an amended alleged onset date of June 15, 2018.[1] AR at 23, 45, 216-29. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 145-51, 156-63. After the ALJ conducted a hearing in November 2019, the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 40-68.

Plaintiff submitted additional evidence along with her request for Appeals Council review. AR at 8-14, 437-46. The Appeals Council denied Plaintiff's request for review, and the ALJ's decision is therefore the Commissioner's final decision. *Id.* at 1-7. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 4.)

### III.  LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id.*

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d

---

[1] By amending her alleged onset date, Plaintiff dismissed her claim for DIB and the ALJ's decision only addresses Plaintiff's SSI application. *See* AR at 23, 45.

1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV. DISCUSSION

### A. The ALJ Did Not Harmfully Err in Assessing Plaintiff's Testimony

The ALJ summarized Plaintiff's allegations and explained that he discounted them because: (1) Plaintiff's treatment record contained many normal and/or unremarkable physical findings, (2) Plaintiff reported improvement in her physical symptoms with conservative treatment, (3) Plaintiff's mental symptoms were controlled with medication, and (4) Plaintiff's activities were inconsistent with her reported limitations. AR at 29-31. In the Ninth Circuit, in the absence of evidence of malingering, an ALJ's reasons to discount a claimant's testimony must be clear and convincing. *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

Plaintiff mounts several challenges to the ALJ's reasoning. First, Plaintiff argues that the ALJ's references to certain normal findings, such as normal gait, do not constitute an inconsistency with her testimony because fibromyalgia is not an orthopedic condition. (Dkt. # 20 at 12.) But the ALJ did not suggest fibromyalgia was an orthopedic condition: the ALJ contrasted Plaintiff's normal gait with her reports of an inability to walk even a block at a reasonable pace on rough or uneven surfaces (AR at 30), as well as her report that she could only walk 200 feet at a time (*id*. at 29). Plaintiff reported that her fibromyalgia pain limited her ability to walk, among other activities, and thus the ALJ reasonably considered the evidence of Plaintiff's ability to walk and perform other activities despite her limitations.

Plaintiff also contends that the ALJ erred in discounting her allegations based on her conservative treatment, because there is no cure for fibromyalgia. (Dkt. # 20 at 12.) But the ALJ emphasized Plaintiff's *improvement* with conservative treatment, namely her trigger point injections and physical therapy. *See* AR at 30. The ALJ did not discount Plaintiff's allegations because she received conservative treatment, but because she improved with conservative treatment, which is a valid reason to discount a claimant's testimony. *See, e.g.*, *Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008) ("The record reflects that Tommasetti responded favorably to conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset. Such a response to conservative treatment undermines Tommasetti's reports regarding the disabling nature of his pain.").

Plaintiff goes on to contend that the ALJ failed to account for the limiting effects of her pain: "Nowhere in the decision does the ALJ mention the limiting effects of pain despite years of medical records where significant pain is reported and treated with narcotic (Oxycodone) pain medications." (Dkt. # 20 at 13.) Plaintiff is mistaken: the ALJ's decision repeatedly references Plaintiff's pain allegations and explains why he found those allegations to be inconsistent with other evidence in the record. *See, e.g.*, AR at 30 (discussing Plaintiff's report of at least 50% improvement in pain after trigger injections, improvement in pain with medication and therapeutic stretches, 70% pain relief with current medication regimen, improvement in pain with physical therapy). Although Plaintiff posits that her repeated injections indicate that the relief is not long-lasting (dkt. # 20 at 13), the ALJ noted that Plaintiff's provider advised her to receive them regularly in order to maximize her relief. AR at 30 (referencing, *e.g.*, *id*. at 829, 833, 837, 841, 844). That treatment must be applied regularly in order to be effective does not

ORDER - 4

mean that the treatment is ineffective, and Plaintiff has not shown that the ALJ's interpretation of Plaintiff's injection regimen is unreasonable.

Furthermore, the ALJ is not required to credit a claimant's pain allegations, *Molina*, 674 F.3d at 1112, and Plaintiff has not shown that the ALJ's reasons to discount her pain allegations are insufficient. Plaintiff questions the ALJ's reference to her "heavy" tobacco use (AR at 29), but the treatment notes reference her use in connection with medical advice to stop smoking. *See, e.g.*, *id*. at 718-19. Plaintiff testified at the hearing that she had recently reduced her smoking and planned to stop entirely. *Id*. at 61-62. The ALJ did not state that Plaintiff's smoking habits undermined her allegations, and Plaintiff has not shown that the ALJ erred in referencing her smoking habits as documented in the treatment record in his summary of the evidence.

Lastly, Plaintiff challenges the ALJ's reliance on her activities as a basis for discounting her allegations. (Dkt. # 20 at 14-16.) An ALJ may rely on activities as a basis for discounting a claimant's allegations if the claimant's activities contradict her allegations. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Plaintiff contends that the ALJ erred in citing activities that either were performed before the amended alleged onset date or do not prove that she can work full-time. To the extent that the ALJ referenced pre-onset activities (AR at 30 (citing *id*. at 703, 719)), those citations do not support the ALJ's conclusion. But the fact that other activities do not prove Plaintiff can work full-time does not show error in the ALJ's decision, because an ALJ may properly rely upon a claimant's activities that *either* contradict a claimant's testimony *or* demonstrate the existence of transferable work skills. *See Orn*, 495 F.3d at 639. To the extent that Plaintiff also argues that some of the activities, when considered in context, do not meaningfully contradict her allegations (dkt. # 20 at 14-16), even if the ALJ did err in this section, any error is harmless in light of the ALJ's other valid reasons to discount Plaintiff's

ORDER - 5

allegations. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

Because Plaintiff has not established harmful legal error in the ALJ's assessment of her testimony, the Court affirms this portion of the ALJ's decision.

**B.     The ALJ Did Not Err in Assessing the Medical Opinion Evidence**

Plaintiff argues that the ALJ erred in crediting the State agency consultant opinions, which rejected all of the medical opinions reviewed, and in assessing a consultative examiner's opinion. (Dkt. # 20 at 8-11.) The Court will consider each disputed opinion in turn.

*1.     Legal Standards*

The regulations effective March 27, 2017, 20 C.F.R. §§ 404.1520c(c), 416.920c(c), require the ALJ to articulate how persuasive the ALJ finds medical opinions and to explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). The regulations require an ALJ to specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion. Thus, the regulations require the ALJ to provide specific and legitimate reasons to reject a doctor's opinions. *See, e.g., Kathleen G. v. Comm'r of Social Sec.*, No. C20-461-RSM, 2020 WL 6581012, at *3 (W.D. Wash. Nov. 10, 2020) (finding that the new regulations do not clearly supersede the "specific and legitimate" standard because the "specific and legitimate" standard refers not to how an *ALJ* should weigh or evaluate opinions, but rather the standard by which the *Court* evaluates whether the ALJ has reasonably articulated his or her consideration of the evidence).

Further, the Court must continue to consider whether the ALJ's analysis is supported by substantial evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82

ORDER - 6

Fed. Reg. 5852 (January 18, 2017) ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision … [T]hese courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standard of review, which is intended to be highly deferential standard to us.").

### 2. The ALJ Did Not Err in Assessing the State Agency Opinions

Plaintiff argues that the State agency opinions did not adequately explain why the consultants failed to credit various opinions. (Dkt. # 20 at 9.) Plaintiff suggests that the ALJ's reliance on the State agency opinion thus fails to "build an accurate and logical bridge from the evidence to his or her conclusions." (*Id.*) But Plaintiff has not shown that the ALJ failed to link the evidence to his conclusions because she fails to address the ALJ's reasons for finding the State agency opinions persuasive: the ALJ pointed to specific evidence that corroborated the State agency opinions, namely Plaintiff's treatment record and demonstrated functioning. AR at 31. Plaintiff has failed to show that the ALJ unreasonably found the State agency opinions to be consistent with the record, and thus has not established error in the ALJ's assessment of these opinions.

### 3. The ALJ Did Not Err in Assessing the Opinion of Robert Sise, M.D.

Dr. Sise performed a psychiatric examination of Plaintiff in September 2018 and wrote a narrative report describing her symptoms and describing her functional abilities as either "fair," "somewhat fair" or "somewhat limited." AR at 808-11. The ALJ found Dr. Sise's opinion to be consistent with his examination and other psychiatric examinations, as well as with Plaintiff's lack of mental health treatment. *Id*. at 31-32. The ALJ noted that Dr. Sise used vague, undefined words to describe the degree of Plaintiff's limitation, but "[t]o the extent [his] opinion does not

ORDER - 7

indicate more than mild limitation in mental functioning, [the ALJ] f[oun]d this opinion to be persuasive." *Id*. at 32.

Plaintiff first argues that consultative examinations play an important role in the disability adjudication process. (Dkt. # 20 at 10-11.) That may be true but does not indicate that the ALJ erred in finding that Dr. Sise used vague, undefined words to describe Plaintiff's limitations. Plaintiff goes on to argue that the ALJ should have recontacted Dr. Sise if his terminology was inadequate, and that the ALJ was nonetheless able to interpret Dr. Sise's opinion despite its shortcomings. (*Id*. at 11.) This argument is not persuasive: the ALJ did not find Dr. Sise's opinion to be inadequate and therefore was not required to recontact him for clarification, and Plaintiff has not shown that the ALJ was unreasonable in finding that his terminology was vague or in discounting it, to some extent, on this basis. *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) ("Here, the ALJ found that Dr. Zipperman's descriptions of Ford's ability to perform in the workplace as 'limited' or 'fair' were not useful because they failed to specify Ford's functional limits. Therefore, the ALJ could reasonably conclude these characterizations were inadequate for determining RFC.").

Because Plaintiff has not shown that the ALJ erred in assessing Dr. Sise's opinion, the Court affirms this portion of the ALJ's decision.

    4.  *The ALJ Did Not Err in Assessing the Opinion of Beth Liu, M.D.*

Plaintiff also argues that the ALJ erred in rejecting the opinion of Dr. Liu, who performed a consultative examination of Plaintiff in September 2018 and wrote a narrative report describing Plaintiff's physical limitations. AR at 802-06. The ALJ noted that Dr. Liu referenced Plaintiff's "account of her limitations" as part of the basis for her opinion, yet the ALJ discounted Plaintiff's self-reporting, for reasons discussed *infra*. *Id*. at 32. The ALJ also found that Dr. Liu's

ORDER - 8

opinion that Plaintiff was limited to four hours of sitting per day (50-60 minutes at a time) was inconsistent with treatment notes showing improvement with treatment, and that Dr. Liu's normal findings as to Plaintiff's ability to grip, grasp, and manipulate contradicted her opinion that Plaintiff was limited to frequent use of her hands. *Id*. Lastly, the ALJ found that the restrictions listed by Dr. Liu were inconsistent with Plaintiff's activities. *Id*.

Plaintiff indicates that the ALJ discounted Dr. Liu's opinion on the grounds that: "The opinion relies heavily on the subjective report of symptoms and limitations provided by the individual and the totality of the evidence does not support the opinion." (Dkt. # 27 at 9.) But, as indicated above, the ALJ did not provide this rationale for discounting Dr. Liu's opinion: the ALJ provided three specific reasons that are neither, as Plaintiff claims (*id*.), vague nor fail to acknowledge that Dr. Liu examined Plaintiff herself. Plaintiff has not shown that any of the ALJ's stated reasons for discounting Dr. Liu's opinion are erroneous, and the Court therefore affirms this portion of the ALJ's decision.

C.     **The ALJ Did Not Err in Assessing the Lay Evidence**

The ALJ summarized statements provided by Plaintiff's mother and hairstylist (AR at 287, 289-99, 410), and explained that he found these statements to be less persuasive than the opinions of the State agency consultants and a consultative psychological examiner, which were more consistent with the record overall. *Id*. at 32. An ALJ's reasons to discount a lay statement must be germane. *See Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) ("If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness.").

Plaintiff argues that the ALJ erred in discounting lay statements in favor of medical opinions when the lay statements corroborated the medical opinions via direct observation. (Dkt.

# 20 at 16-17.) Although Plaintiff contends that the lay statements are consistent with the medical opinion evidence (*id*. at 17), that is not entirely true: as noted by the ALJ, the State agency consultants and the consultative psychological examiner opined that Plaintiff's limitations were not disabling (AR at 31-32), whereas the lay witnesses described disabling sitting, standing, and memory limitations. *See id*. at 287, 289-99, 410. The ALJ did not err in finding the lay statements to be inconsistent with the credited medical opinions, or in discounting the lay statements on this basis. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence."). Accordingly, the Court affirms this portion of the ALJ's decision.

### D. The ALJ Did Not Err in Assessing Plaintiff's RFC

The ALJ's RFC assessment describes Plaintiff as capable of performing light work with the following additional limitations, in relevant part: she can stand/walk for up to four hours in an eight-hour workday. She can frequently stoop, and occasionally kneel, crouch, and crawl. AR at 28.

Plaintiff argues that the ALJ erred in defining Plaintiff as capable of standing/walking four hours per workday, and yet finding that she was capable of performing light work, because the full range of light work is defined to require approximately six hours of walking per workday. (Dkt. # 20 at 6-7.) But the ALJ did not find that Plaintiff could perform the full range of light work: the vocational expert ("VE") testified that Plaintiff's standing/walking limitations did not preclude her from performing the "modified light" jobs identified at step five because those jobs permit a sit/stand option. *See* AR at 64-66. This testimony constitutes substantial evidence upon which the ALJ was entitled to rely, indicating that Plaintiff could perform *some* light jobs even with her stand/walk limitation as identified in the ALJ's RFC assessment. *See*

*Terry v. Saul*, 998 F.3d 1010, 1013 (9th Cir. 2021).

Plaintiff goes on to argue that a person who is limited to performing sedentary work cannot stoop up to two-thirds of a day. (Dkt. # 20 at 7-8.) But the ALJ did not restrict Plaintiff to performing sedentary work: as noted above, the ALJ's RFC assessment describes a reduced range of light work. *See* AR at 28. Thus, Plaintiff has not shown that there is any conflict between the ALJ's restriction to frequent stooping and any other part of the ALJ's RFC assessment.

### E. The Appeals Council Evidence Does Not Require Remand

At the administrative hearing, the VE identified three light jobs that could be modified to permit a sit/stand option and would therefore be consistent with the ALJ's RFC assessment. AR at 64-66. The VE explained that his testimony as to the sit/stand option was not addressed in the Dictionary of Occupational Titles ("DOT") but was based on his professional experience. *Id*. at 66. The VE testified that he eroded the job numbers for one of the jobs by 50% to account for the sit/stand option, but that there were nonetheless more than 600,000 total jobs in the national economy that Plaintiff could perform. *Id*. at 65.

Plaintiff submitted for the first time to the Appeals Council evidence suggesting that the step-five jobs identified by the VE do not exist in significant numbers or are otherwise inconsistent with Plaintiff's RFC. *See* AR at 8-11, 437-46. Plaintiff argues that this evidence undermines the ALJ's decision and therefore requires remand. (Dkt. # 20 at 17-18.)

According to the Commissioner, the mere existence of contradictory evidence based on other data not considered by the VE does not suggest that the ALJ erred in relying on the VE's testimony. (Dkt. # 24 at 16-17.) The Court agrees, as the Ninth Circuit has recently explained that Appeals Council evidence based on data gleaned from other publications does not eviscerate

ORDER - 11

VE testimony based on "unchallenged expertise" and "reference to the [DOT]." *See Terry*, 998 F.3d at 1013 (citing *Ford*, 950 F.3d at 1159). Here, Plaintiff did not challenge the VE's expertise at the hearing and presents data based on Department of Labor statistics and/or O*Net publications that the VE did not evidently consult. Under these circumstances, where it appears that the Appeals Council evidence is based on different data than the VE's testimony, Plaintiff has not shown that the VE's testimony was unreliable or created a conflict that required resolution by the Commissioner. *Cf. Buck v. Berryhill*, 869 F.3d 1040, 1051-52 (9th Cir. 2017).

Although Plaintiff contends that the VE failed to justify or reference any support for his conclusions (dkt. # 27 at 2), Plaintiff is mistaken: the VE cited both the DOT and his own professional experience as the basis for his testimony (AR at 64-66), and although Plaintiff has presented evidence inconsistent with the VE's testimony, she has not shown that the ALJ erred in relying on the VE's testimony at step five. Because the ALJ's step-five findings are supported by substantial evidence in the form of the VE's testimony, the Appeals Council evidence notwithstanding, the Court finds no basis to remand in light of the Appeals Council evidence. *See Brewes v. Comm'r of Social Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012) ("[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence.").

//
//
//
//
//

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED,** and this case is **DISMISSED** with prejudice.

Dated this 9th day of November, 2021.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 13